**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | **No. CR 22-01545-TUC-RM (EJM)** |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Aaron Thomas Mitchell, | |
| Defendant. | |

Pending before the Court is a Motion to Dismiss Count Two of the Superseding Indictment which charges the defendant, Aaron Thomas Mitchell, with kidnapping, in violation of 18 U.S.C. § 1201(a)(1).  (Doc. 108). The defendant argues that Count Two should be dismissed for lack of jurisdiction.  *Id*. at 1.  Specifically, the defendant argues that the federal jurisdiction under the Commerce Clause cannot be based on the intrastate use of a motor vehicle during a kidnapping because: (1) there is not a substantial effect on interstate commerce; and (2) a vehicle is not an "instrumentality of interstate commerce." (Docs. 108 & 155).

The government argues jurisdiction under the Commerce Clause for the kidnapping offense is not based on the offense's effect on interstate commerce.  (Doc. 124 at 2-3) Rather, jurisdiction is based on the vehicle being an instrumentality of interstate commerce. *Id*. at 2-4.  The government claims that the law is clear that a vehicle is an instrumentality of interstate commerce for purposes of the kidnapping statute.  *Id*.  As a result, there is federal jurisdiction for this offense.

The Court concludes that vehicles, as a class, are not an instrumentalities of interstate commerce for purposes of the kidnapping statute. Rather, a court must view automobiles individually when deciding their instrumentality status under the kidnapping statute. As a result, a case-by-case analysis is necessary to make the instrumentality determination. For the reasons discussed below, that factual analysis cannot be conducted by the Court in resolving the motion to dismiss; it must await the evidence presented at trial.

However, for purposes of a motion to dismiss, the Court must accept the truth of the allegations in Count Two in analyzing whether a cognizable offense has been charged. At this point, the government has not presented all its evidence; it has only provided enough sufficient for an indictment. Count Two alleges that a vehicle is the instrumentality of interstate commerce used to commit the kidnapping. Because a vehicle used during a kidnapping *can* be an instrumentality of interstate commerce based on the facts of a given case, a cognizable offense has been alleged. As a result, the Court recommends that the District Court deny the Motion to Dismiss Count Two, but grant the defendant leave to renew the motion at the close of the government's presentation of evidence at trial.

## **FACTUAL BACKGROUND**

The defendant is charged in a Superseding Indictment with the following offenses: (1) Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242 (Count One); (2) Kidnapping of a Minor, in violation of 18 U.S.C. §§ 1201(a)(1) and (g) (Count Two); and False Statements, in violation of 18 U.S.C. § 1512(b)(3) (Count Three) (Doc. 37). Count One pertains to the defendant's alleged sexual assault of a minor. Count Three pertains to alleged false statements made by the defendant to law enforcement about his involvement in the sexual assault and the kidnapping offense charged in Count Two.

Count Two, which is the subject of the instant motion, alleges that: "On or about April 25, 2022, in the District of Arizona, the defendant AARON THOMAS MITCHELL, did unlawfully seize, confine, inveigle, kidnap, abduct, and carry away, M.V. The defendant willfully used an instrumentality of interstate and foreign commerce, to wit: a

- 2 -

vehicle, in committing and in furtherance of the commission of the offense.  At the time of the offense M.V. had not attained the age of 18 years, and the defendant had attained such age; the defendant is not a parent, grandparent, brother, sister, aunt and uncle of M.V.; and the defendant did not have legal custody of M.V.  All in violation of Title 18, United States Code, Sections 1512(b)(3)."  (Doc. 37).[1]

In his Motion to Dismiss Count Two, the defendant "requests that the Court reconsider existing legal authority and find that federal jurisdiction via the Commerce Clause should not be supplied strictly by the nature of the instrumentality or facility used, but instead by a qualifying nexus, or a separate proof of interstate movement."  (Doc. 108 at 2).  The defendant concedes that the Supreme Court has "greatly expanded the power of Congress to regulate economic activities, even in instances where the connection with interstate commerce is 'indirect.'"  *Id.* at 3 (*citing NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1 (1937); *United States v. Darby*, 312 U.S. 100 (1941); *Wickard v. Filburn*, 317 U.S. 111 (1942)).   However, the defendant points out that the Supreme Court has also acknowledged that there are limits to the reach of the Commerce Clause.  Def.'s Mot. to Dismiss Count Two (Doc. 108) at 3.

The defendant contends that the Federal Kidnapping Act, 18 U.S.C. § 1201, "is not related to economic activities" and "does not regulate the use of the channels of interstate commerce or the transportation of a commodity through the channels of commerce."  *Id.* at 5.  In fact, in the case at hand, the government only alleges that the defendant used his vehicle, an instrumentality of interstate commerce, during a kidnapping.  The government does not allege that the defendant crossed state lines or used interstate highways to effectuate the kidnapping.  The defendant argues that "[w]hile the legal authority is clear, it is [the defendant's] position that the government should be required to show that the

---

[1] As discussed in text *infra*, when the kidnapping statute was first enacted in 1932, federal jurisdiction was limited to cases where there was interstate travel during the kidnapping.  In 2006, Congress enacted the Adam Walsh Act which, among other things, amended section 1201(a)(1) and expanded federal jurisdiction to include kidnappings where "the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense."

activity in this instance, the use of a motor vehicle to affect an intrastate kidnapping on local roads, without the use of a channel of commerce like an interstate highway, substantially affects interstate commerce." *Id*.   The defendant requests that this Court change the law "to require a case-by-case inquiry to assure the prohibited activity has the 'requisite nexus to interstate commerce.'" *Id*. (*quoting United States v. Lopez*, 514 U.S. 549, 561–62 (1995)).

The government's Response argues that the defendant is asking this Court "to ignore existing precedent holding that a car is an instrumentality of interstate and foreign commerce" and change the law "in order to destroy federal jurisdiction and thereby dismiss the charge." (Doc. 124 at 2).   The government claims that the Ninth Circuit and other circuit courts have repeatedly held that a vehicle is an instrumentality of interstate commerce. *Id.*   Moreover, lower federal courts have rejected the argument made by the defendant and held that the use of a vehicle satisfies the jurisdictional element of the federal kidnapping statute. *Id.* at 4–5.   As a result, the government contends that "there is no legal support whatsoever for the defendant's argument that Count Two of the Superseding Indictment should be dismissed." *Id*. at 5.

At oral argument on the Defendant's Motion to Dismiss Count Two, the Court asked defense counsel if the constitutional challenge to federal jurisdiction for the kidnapping offense was only based on the argument that the government cannot establish that this offense "substantially affects interstate commerce."   More specifically, the Court asked if the defense was also arguing that a vehicle is not an "instrumentality of interstate or foreign commerce," the jurisdictional basis alleged in Count Two.   The Court also asked if the defense was making an "as applied" constitutional challenge to the kidnapping statute, or only a facial challenge to that statute.   Defense counsel represented that the defense was making all of these arguments.   The Court noted that it did not read the motion as making all of these arguments.   However, in its Response, the government argued that the law is clear that a vehicle is an instrumentality of interstate and foreign commerce for purposes of the kidnapping statute.   Because the Court did not feel that the government was

1    sandbagged by the arguments identified by the Court, supplemental briefing was ordered
2    to address, in part, case law identified by the Court but not cited by the parties.

3         The supplemental pleadings primarily address why the cases identified by the Court
4    support the parties' respective positions.   The Court will address those arguments during
5    its discussion of the relevant cases.   However, both parties make evidentiary based
6    arguments that were not contained in the initial pleadings.

7         The government argues that the court must decide as matter of law if a motor vehicle
8    is an instrumentality of interstate commerce for purposes of the kidnapping statute.  (Doc.
9    153 at 8–9.)  If the court concludes that is the case, the court will give the jury an instruction
10   saying just that.  *Id*.  The only fact question left for the jury is whether the government has
11   proven beyond a reasonable doubt that the defendant used a motor vehicle to commit or
12   further the commission of the kidnapping.  *Id*.

13        In the defendant's supplemental pleading, he asserts that the allegation in Count
14   Two that a vehicle is the instrumentality of interstate commerce used to commit the
15   kidnapping is not surplusage.  (Doc. 155 at 5, 10).  Specifically, the grand jury found
16   probable cause for the kidnapping offense based only on a vehicle being the instrumentality
17   of interstate commerce used to commit the kidnapping.  *Id*. at 5–6.  As a result, the
18   government is bound to this theory at trial and cannot present evidence at trial that some
19   other instrumentality of interstate commerce (*e.g*., a phone) was used to commit the
20   offense.  *Id*. at 10.  If the government did so, it would be improperly constructively
21   amending Count Two at trial.  *Id*.

22        As discussed below, the Court believes that these arguments are more properly
23   raised with the district court at (or before) trial.

24                                    **DISCUSSION**

25        The Federal Rules of Criminal Procedure require the indictment to "be a plain,
26   concise, and definite written statement of the essential facts constituting the offense
27   charged[.]"  Fed. R. Crim. Pro. 7(c)(1)*; see also United States v. Davis*, 336 F.3d 920 (9th
28   Cir. 2003).  To withstand a motion to dismiss, "the indictment must allege the elements of

- 5 -

1   the offense charged and the facts which inform the defendant of the specific offense with
2   which he is charged.*"  *United States v. Livingston*, 725 F.3d 1141, 1145 (9th Cir. 2013).
3   "It is generally sufficient that an indictment set forth the offense in the words of the statute
4   itself, as long as those words of themselves fully, directly and expressly, without any
5   uncertainty or ambiguity, set forth all the elements necessary to constitute the offense
6   intended to be punished."  *United States v. Mancuso*, 718 F.3d 780, 790 (9th Cir. 2013)
7   (internal quotations omitted) (*quoting Hamling v. United States*, 418 U.S. 87, 117 (1974)
8   (citations omitted)); *see also United States v. Alphonso*, 143 F.3d 772, 776 (2d Cir. 1998)
9   (an indictment need do little more than to track the language of the statute charged and
10  state the time and place (in approximate terms) of the alleged crime).

11      An indictment that fails to state a cognizable offense must be dismissed.  *United*
12  *States v. Milovanovic,* 678 F.3d 713, 717, 719-720 (9th Cir. 2012).  However, a court
13  cannot dismiss a facially valid indictment because the evidence may be insufficient to
14  support a conviction.  *Costello v. United States,* 350 U.S. 359, 363 (1956).  "On a motion
15  to dismiss an indictment for failure to state an offense, the court must accept the truth of
16  the allegations in the indictment in analyzing whether a cognizable offense has been
17  charged."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

18      <u>Federal Jurisdiction Under the Commerce Clause</u>

19      In *United States v. Lopez*, 514 U.S. 549, 558 (1995), the Supreme Court identified
20  three broad categories of activities that Congress may regulate under its commerce power:
21  (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce,
22  or persons or things in interstate commerce, even though the threat may come only from
23  intrastate activities; and (3) activities substantially affecting interstate commerce.  *Lopez*
24  dealt with the constitutionality of the Gun-Free School Zones Act, 18 U.S.C. 922(q)(1)(A),
25  which prohibited the knowing possession of a firearm within a school zone.  514 U.S. at
26  551.  The Court first held that Section 922(q)(1)(A) was not an attempt by Congress "to
27  regulate the use of the channels of commerce" or "to regulate and protect instrumentalities
28  of interstate commerce," two areas undisputedly situated within Congress's commerce

power.  *Id*. at 558-560.  As a result, the constitutionality of this statute turned on whether it satisfied the third category of permissible legislation noted above: "regulation of an activity that substantially affects interstate commerce."  *Id*. at 559.  The Court concluded that Section 922(q)(1)(A) was unconstitutional because the government failed to demonstrate that the mere possession of guns in school zones produced the requisite substantial effect.  *Id*. at 567–568.

The defendant's challenges to the constitutionality of the kidnapping statute are based primarily on *Lopez*.  As noted earlier, the defendant first argues that the third *Lopez* category should control the jurisdictional analysis in the case at hand.   The defendant argues that the government cannot establish that an intrastate kidnapping substantially affects interstate commerce.  As a result, there is not federal jurisdiction for the kidnapping offense under the Commerce Clause.  Alternatively, the defendant argues that if the second *Lopez* category controls the analysis, the government cannot establish that a vehicle is "an instrumentality of interstate or foreign commerce" for purposes of the kidnapping statute; as a result, no federal jurisdiction exists for that offense.  The Court addresses these arguments in turn.

*Lopez* Category Three: substantial effect on interstate commerce.

Count Two of the Superseding Indictment clearly and unequivocally alleges that federal jurisdiction is based on the second *Lopez* category -- a vehicle being an "instrumentality of interstate and foreign commerce."  (Doc. 38).   Nevertheless, the defendant urges that the jurisdictional analysis should be conducted under the third *Lopez* category:  whether there is "a substantial impact on interstate commerce."  For the reasons discussed below, the Court concludes that the second *Lopez* category – empowering Congress "to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate – controls the Commerce Clause analysis for the kidnapping statute. Moreover, the Court agrees with the numerous courts who have concluded that Congress did not exceed its Commerce Clause authority by expanding federal jurisdiction to kidnappings where an instrumentality of interstate or foreign commerce has been used to

1    commit that offense.   However, as discussed *infra*, the more difficult question is whether

2    a vehicle is an "instrumentality of interstate or foreign commerce" for purposes of the

3    kidnapping statute.

4         The Ninth Circuit has not addressed the constitutionality of the federal kidnapping

5    statute or the *Lopez* category pursuant to which the statute must be analyzed.   However,

6    other circuits have conducted their analysis of the constitutionality of the kidnapping

7    statute under the second *Lopez* category – empowering Congress "to regulate and protect

8    the instrumentalities of interstate commerce, or persons or things in interstate commerce,

9    even though the threat may come only from interstate activities."  *United States v. Morga*n,

10   748 F.3d 1024, 1032 n.9 (10th Cir. 2014) (rejecting as applied challenge to the kidnapping

11   statute because a cell phone, GPS device, and the Internet are instrumentalities of interstate

12   commerce); *see also United States v. Chambers*, 681 Fed. App'x 72, 80 (2d Cir. 2017)

13   (finding that Congress's enactment of the kidnapping statute did not exceed its Commerce

14   Clause authority and that a cell phone is an instrumentality of interstate commerce under

15   that statute).[2]  Those courts conclude that because the kidnapping statute prohibits the use

16   of instrumentalities of interstate commerce for the harmful act of kidnapping, it is within

17   Congress's purview under the Commerce Clause.

18        The courts reach that conclusion for several reasons.  First, "[t]he express language

19   of § 1201 makes it a federal crime to use 'the mail or any means, facility, or instrumentality

20   of interstate or foreign commerce' in committing kidnapping."  *Chambers*, 681 Fed. App'x

21   at 81 (quoting 18 U.S.C. § 1201).   Thus, analyzing the kidnapping statute under *Lopez*

22

23        [2] District courts that have addressed a facial challenge to the kidnapping statute have
24   likewise found that it is a valid exercise of Congress's commerce power pursuant to the second
     *Lopez* category.  *See United States v. Bachicha*, No. 1:19-cr-02328-MLG-1, 2023 WL 8566503
25   (D.N.M. Dec. 11, 2023); *United States v. Glover*, No. 3:22-cr-00057-HZ, 2023 WL 3304311 (D.
     Or. May 7, 2023); *United States v. Davis*, No. 16 CR 570, 2019 WL 447249 (N.D. Ill. Feb. 5,
26   2019); *United States v. Brown*, No. 13 Cr. 345(LGS), 2014 WL 4473372 (S.D.N.Y. Sept. 10,
     2014); *United States v. Graves*, No. 1:13-cr-417-WSD-JSA, 2014 WL 2589428 (N.D. Ga. June 9,
27   2014*); United States v. Ramos*, 12 Cr. 566(LTS), 2013 WL 1932110 (S.D.N.Y. May 8, 2013);
     *United States v. Taylor*, No. 12-0056-WS, 2012 WL 3522528 (S.D. Ala. Aug. 14, 2012); *United
28   States v. Jacques*, No. 2:08-cr-117, 2011 WL 1706765 (D. Vt. May 4, 2011).

category two is logical because the statute explicitly purports to regulate the precise activity identified in category two. *Id.* "Second, when analyzed under the Lopez category two, it is clear that the kidnapping statute is a valid exercise of Congress's authority, since '[t]he power of Congress over the instrumentalities of interstate commerce is plenary.'" *Brown*, 2014 WL 4473373 at * 4 (*quoting Cleveland v. United States*, 329 U.S. 14, 19 (1946)). This plenary power extends to regulation of the channels and instrumentalities of commerce "to prohibit their use for harmful purposes, even if the targeted harm itself occurs outside the flow of commerce and is purely local in nature." *Id.* (*quoting Morgan,* 748 F.3d at 1032 n.7. Moreover, "[n]owhere in *Lopez* or any other case has the Supreme Court limited Congress's regulatory authority to prevent the harmful use of an instrumentality of interstate commerce. Indeed, the *Lopez* Court said "'Congress is empowered to regulate and protect the instrumentalities of interstate commerce . . . even though the threat may come only from intrastate activities.'" *Morgan,* 748 F.3d at 1032. "In short, because the use of an instrumentality of interstate commerce is an element that must be proved in every § 1201 case, Congress's enactment of that statute did not exceed its Commerce Clause authority." *Chambers*, 681 Fed. App'x at 81.

The Court finds the approach taken in the cases discussed above is well-reasoned and persuasive. The Court concludes that the Ninth Circuit would take that approach if presented with the defendant's constitutional challenge to the kidnapping statute based on that court's application of *Lopez* to Commerce Clause challenges to other criminal offenses. *See United States v. Oliver*, 60 F.3d 547, 550 (9th Cir. 1995) (Commerce Clause provides jurisdiction for the federal carjacking statute because the statute applies only to the forcible taking of a car 'that has been transported, shipped, or received in interstate or foreign commerce" and the legislative history reflects that Congress was addressing economic evils of a interstate nature.); *United States v. Dela Cruz*, 358 F.3d 623, 625 (9th Cir. 2004) (A telephone is an instrumentality of interstate commerce for purposes of 18 U.S.C. 844(e) when "used in a conventional way, as a means of communication and as part of an interstate communications network[.]").

- 9 -

Because the kidnapping statute is properly analyzed under the second *Lopez* category, no further analysis is necessary for the defendant's constitutional challenge to this statute based on the third *Lopez* category. Accordingly, the Court recommends that the District Court deny the Motion to Dismiss Count Two of the Superseding Indictment on this ground.

*Lopez* Category Two: instrumentality of interstate commerce.

As noted earlier, the Ninth Circuit had not addressed a constitutional challenge to the kidnapping statue based on a Commerce Clause violation. However, as also noted earlier, the Ninth Circuit has applied *Lopez* to Commerce Clause challenges to other criminal offenses. *See Oliver*, 60 F.3d 547 (9th Cir. 1995); *Dela Cruz*, 358 F.3d 623 (9th Cir. 2004). The Court turns to a discussion of those cases before addressing cases that have addressed the precise issue at hand – *i.e.*, whether a vehicle used solely intrastate during a kidnapping is "an instrumentality of interstate or foreign commerce" for purposes of the kidnapping statute.

In *Oliver*, the defendant was charged under the federal carjacking statute, 18 U.S.C. § 2119. 60 F.3d at 548. That offense only involved alleged intrastate activity. *Id*. at 549. The defendant argued that Congress exceeded its power under the Commerce Clause in enacting the carjacking statute because that offense is not sufficiently related to interstate commerce. *Id.*

The Ninth Circuit first noted that it recently rejected that same argument in *United States v. Martinez*, 49 F.3d 1398, 1400–1401 (9th Cir. 1995). *Oliver*, 60 F.3d at 549–50. The *Oliver* court held that the Supreme Court's recent decision in *Lopez* did not alter its view. *Id*. at 550. The court explained that in *Lopez* the Supreme Court found that the Gun-Free Zones Act contained no jurisdictional element which would ensure, through a case-by-case inquiry, that the firearm in possession affected interstate commerce. *Id*. The Supreme Court also noted that this statute did not seek to protect an instrumentality of interstate commerce. *Id.*

The Ninth Circuit concluded that, unlike the Gun-Free Zones Act, the carjacking

statute has a very different background.  *Id.*   First, the carjacking statute "applies only to the forcible taking of a car 'that has been transported, shipped, or received in interstate or foreign commerce.'"  *Oliver*, 60 F.3d at 550 (*quoting* 18 U.S.C. 2119)).  "Second, cars themselves are instrumentalities of interstate commerce, which Congress may protect."  *Id*. Finally, "Congress was not silent regarding the effect of carjacking on interstate commerce."  *Id*.  "[C]ongress relied on, among other things, the emergence of carjacking as a high grow industry that involves taking stolen vehicles to different states to retitle, exporting vehicles abroad, or selling cars to 'chop shops' to distribute various auto parts for sale."  *Id.* (internal quotations and citations omitted).  The court reasoned that the fact that "Congress was addressing economic evils of an interstate nature differentiate[d] the carjacking statute from the firearms statute invalidated in *Lopez*."  *Id*.

The case at hand is distinguishable from *Oliver* because federal jurisdiction for carjacking statute hinges on the government proving that the vehicle had "been transported, shipped, or received in interstate or foreign commerce."  Thus, there is interstate activity built into the jurisdictional provision of the carjacking statute – a car moving from one state to another at any point in time, even if not in connection with the carjacking offense.  That is not the case for the kidnapping statute.  The carjacking statute is similar to many federal firearms offenses where jurisdiction is premised on the interstate movement of a firearm or its parts at any point in time.   Again, jurisdiction under the kidnapping statute is much broader and does not explicitly require interstate movement of persons or objects.  *Oliver* is also distinguishable because there are congressional findings that address the effect of carjackings on interstate commerce.  The legislative history for that statute shows that Congress was addressing the economic evils that resulted from carjackings.  By contrast, there are no congressional findings for the 2006 amendments to the kidnapping statute which greatly broadened federal jurisdiction for that offense.  As a result, the Court does not find *Oliver* especially helpful in resolving the jurisdictional issue in the case at hand.

However, the Ninth Circuit has rejected a Commerce Clause challenge to a statute that is more comparable to the federal kidnapping statute.  *See Dela Cruz*, 358 F.3d 623,

625 (9th Cir. 2004). The defendant in that case was charged with a violation of 18 U.S.C. 844(e), which prohibits "*through the use of the mail, telephone, telegraph, or other instrument of interstate or foreign commerce*" to make a threat or convey false information concerning an attempt to kill, injure, or intimidate any individual or unlawfully damage or destroy any building, vehicle or other real or personal property by means of fire or an explosive. 18 U.S.C. § 844(e). The defendant argued that "his particular calls must have substantially affected interstate commerce [(*Lopez* category three)] in order to be reached by 844(e)." *Dela Cruz*, 358 F.3d at 625.

The Ninth Circuit first noted that the defendant's argument was based on an erroneous reading of *Lopez* and the Supreme Court's "discussion of when conduct must have substantial effects on interstate commerce in order to be reached under the commerce power." *Id.* The *Dela Cruz* court applied the second *Lopez* category because a phone was alleged to be an instrumentality of interstate commerce; as a result, "no substantial effects inquiry [was] needed." *Id.* The Court rejected the defendant's argument that Section 844(e) "requires the government to show that he used the particular phone from which he made the calls for interstate purposes." *Id.* The court held that "[w]here a telephone is used in a conventional way, as a means of communication and as part of an interstate communications network, it is an instrumentality of interstate commerce." *Id.*[3]

This Court finds that *Dela Cruz* is distinguishable from and not controlling on the issue in the case at hand. The *Dela Cruz* court's conclusion that a telephone is an instrumentality of interstate commerce was based on the inherent nature of that instrumentality – *i.e.*, a phone can only function in a conventional way because it is part of an interstate communications network. As discussed in detail below, the same is true for cell phones, the internet, and GPS devices; but that is not the case for motor vehicles.

---

[3] As discussed in text *infra*, the reasoning of the *Dela Cruz* has been applied by other courts in concluding that a cellphone is an "instrumentality of interstate or foreign commerce" for purposes of the kidnapping statute. *See Morgan*, 748 F.3d at 1031 (cellular phones, Global Positioning System, and the internet are "instrumentalities of interstate or foreign commerce" under the kidnapping statute); *Chambers*, 681 Fed. App'x at 81 (federal jurisdiction for the kidnapping offense existed because a cell phone is an "instrumentality of interstate commerce").

In *United States v. Glover*, which involved a kidnapping charge where a cell phone and vehicle were alleged to have been used during the commission of the offense, the district court relied heavily on *Dela Cruz* in rejecting the defendant's Commerce Clause challenges. 2023 WL 3304311 (D. Or. May 7, 2023). The court found that the kidnapping statute was comparable to the bomb statute in *Dela Cruz*. *Glover*, 2023 WL 3304311, at *10. The court first concluded that, contrary to the defendant's contention, *Dela Cruz* "establishes that the Ninth Circuit does not require a statute to be aimed at an instrumentality of interstate commerce to be constitutional under *Lopez* category two." *Id.* at *10. The *Glover* court also rejected the defendant's arguments that the government must "prove either that the instrumentality was actually used in interstate commerce" or "that 'use' of an instrumentality of interstate commerce should be read to require 'an active employment of that instrumentality in interstate commerce.'" *Id.* at *10. The court reasoned that the defendant's interpretation was "inconsistent with *Dela Cruz's* conclusion that a phone is an instrumentality of interstate commerce whether or not the defendant used it in interstate commerce and that the government need not prove use in interstate commerce." *Id.* at *11. The court also found that the defendant's argument was inconsistent with the text of the kidnapping statute which provides several jurisdictional bases, including using "an instrumentality of interstate commerce." The court held that the only reasonable interpretation of the kidnapping statute is that the instrumentality must be of the kind that is commonly used in interstate commerce, and not that it "was actually used in interstate commerce." *Id.* As a result, the court concluded that "the federal kidnapping statute was within Congress's power to enact" and was not unconstitutional as applied to the defendant. *Id.*

Here, the government relies on *Glover* to support its argument that a vehicle used during an intrastate kidnapping is an instrumentality of interstate commerce. The Court disagrees that *Glover* supports the government's argument. The *Glover* court's focus was on whether a cell phone used during the kidnapping was an instrumentality of interstate commerce. Indeed, the court relied almost exclusively on *Dela Cruz* where the

instrumentality was also a phone.  The *Glover* court only mentions vehicles in three instances and provides no analysis of why they are instrumentalities of interstate commerce for purposes of the kidnapping statute.  The first is when the court noted that the defendant did not dispute "that vehicles and cell phones are instrumentalities of interstate commerce." *Id.* at *10.   As a result, the court did not need to resolve or even address that issue, which is the precise issue in the case at hand.  The second is where the court held that that the government "need not prove that *either* instrumentality was actually used in interstate commerce." *Id.* (emphasis added).  Again, that is not the issue the Court is faced with here. The third is when the court stated that:

> Defendant correctly points out that "cars and phones are ubiquitous in modern life."  Under the expansive interpretation of the second *Lopez* category the Government advances, many crimes that have been traditionally handled by the states may fall under the purview of federal jurisdiction, which raises concerns in our federal system.  However, this Court is bound by the Ninth Circuit's interpretation of *Lopez*, which is in line with the Government's position.

*Id.* at *11.

Given the minimal discussion about motor vehicles generally and the absence of any discussion of why a vehicle is an instrumentality of interstate commerce, the Court does not find *Glover* as helpful as the government contends.  Relatedly, as discussed earlier, the Court disagrees with *Glover* that the Ninth Circuit's decision in *Dela Cruz* compels the conclusion that vehicles are instrumentalities of interstate commerce for purposes of the kidnapping statute.

The Court turns to cases not initially cited by either party that address whether a vehicle is an instrumentality of interstate commerce for purposes of the kidnapping statute. *See United States v. Protho*, 41 F.4th 812 (7th Cir. 2022); *United States v. Bachicha*, No. 1:19-cr-02328-MLG-1, 2023 WL 8566503 (D.N.M. Dec. 11, 2023); *United States v. Chavarria*, No. 22-cr-1724-KG, 2023 WL 3815203 (D.N.M. June 5, 2023).  While helpful generally, these courts reach different conclusions and the courts who reach the same conclusion use different reasoning.

In *Protho,* the defendant agreed "that automobiles are generally treated as instrumentalities of interstate commerce." 41 F.4th at 828.  The defendant's argument was that "courts must view automobiles individually – rather than a class – when deciding their instrumentality status" for purpose of the kidnapping statute.  *Id.*  Stated another way, the evidence must show that the specific automobile at issue was, at some point, used for an interstate purpose.  *Id.*

The Seventh Circuit disagreed with the defendant's position that the Commerce Clause requires a court to consider each automobiles specific use in interstate commerce. *Id.* "Instead, it's the nature of the regulated object's class (here, automobiles) rather than the particular use of one member of that class . . . that matters."  *Id.*  However, the court went on to note that even if the defendant's argument was correct, the automobile used for the kidnapping was used in interstate commerce.  *Id.*  The defendant drove the automobile across state lines several times on the day of the kidnapping and regularly drove the automobile between the state where he lived and the state where he worked.  *Id.*   As a result, there was no doubt that the defendant's automobile was used in interstate commerce.

At first blush, *Protho* seems to support the government's argument in the case at hand.  However, in this Court's view, the Seventh Circuit did not adequately explain why it concluded that it is the nature of the regulated object's use – automobiles as a class – that matters.   The court primarily relied on another Seventh Circuit opinion addressing the federal murder-for-hire statute, 18 U.S.C. § 1958(a), which reached the same conclusion. *See United States v. Mandel*, 647 F.3d 710 (7th Cir. 2011).[4]   However, *Mandel* is

---

[4] In *United States v. Windham*, 53 F.4th 1006, 1012 (6th Cir. 2022), the Sixth Circuit agreed with *Protho* that in interpreting the federal kidnapping statute, it was helpful to consider other federal statutes concerning crimes that are "crime traditionally regulated by states."  The defendant in *Windham* plead guilty to a kidnapping offense but then argued on appeal that the factual basis for his guilty plea was insufficient because it did not establish that he used the cell phone or automobile to conduct interstate activity.  *Windham*, 53 F.4th at 1011.  The court noted that it has previously and "unambiguously held that cars and phones are instrumentalities of interstate commerce" for purposes of the federal murder-for-hire statute and the carjacking statute.  *Id.* at 1013.  The court found that the jurisdictional provision of the kidnapping statute was analogous to those statutes.  *Id.*  As a result, the court held that the "intrastate use of a cell phone and automobile satisfies § 1201(a)(1)'s interstate commerce requirements."  *Id.* at 1011.  This Court's concerns

distinguishable from *Protho* and the case at hand.

The court in *Mandel* noted that subsection 1958(b)(2) of the murder-for-hire statute specifically provides that a "'facility of interstate or foreign commerce'" includes means of transportation and communication[.]" 647 F.3d at 720. In fact, the defendant did not "dispute that an automobile, as a 'means of transportation,' constitutes a facility of interstate commerce for purposes of the federal murder for hire statute." *Id.* Rather, the defendant argued that the automobile had to be employed in interstate commerce. *Id.* at 721. The court rejected that argument based on the plain language of the murder-for-hire statute. The *Mandell* court further noted that "even if the [plain] language of § 1958 was ambiguous, . . . the statute's history indicates that Congress sought to punish contract killings pursuant to its authority to regulate the instrumentalities of interstate commerce." *Id.* (internal quotations and citations omitted).[5] *Id.*

In contrast to the murder-for-hire statute, the kidnapping statute does not provide a general definition of "an instrumentality of interstate commerce" for purposes of that statute, let alone specifically provide that a means of transportation meets that definition. Moreover, unlike the murder-for-hire statute, the legislative history for the 2006 amendments to the kidnapping statute is silent on why Congress expanded federal jurisdiction for that offense. Thus, this Court disagrees with the *Protho* court that *Mandell* is dispositive of the issue in the case at hand.

The *Protho* court also noted that "[n]early all circuits have followed this course when faced with similar questions, and no circuit has adopted [the defendant's proposal]" that automobiles be viewed individually when determining their instrumentality status. 41

---

about relying on these other federal statutes is discussed in text, *infra*.

[5] With respect to the legislative history, the *Mandel* court pointed out that "when Congress later amended section 1958 in 2004 to substitute the words 'facility of' for 'facility in,' any doubt on this subject was resolved: 'This amendment makes absolutely clear that 1958 establishes federal jurisdiction wherever any 'facility of interstate commerce' is used in the commission of a murder for hire offense, regardless of whether the use is interstate in nature . . . or purely intrastate in nature . . . .'" 647 F.3d at 721.

1    F.3d at 829 (*citing United States v. Bishop*, 66 F.3d 569 (3d Cir. 1995); *United States v.*
2    *Cobb*, 144 F.3d 319 (4th Cir. 1998); *United States v. McHenry*, 97 F.3d 125 (6th Cir. 1996);
3    *United States v. Robinson*, 62 F.3d 234 (8th Cir. 1995); *Oliver*, 60 F.3d at 550).  However,
4    all but one of those courts were addressing the carjacking statute.[6]  "Unlike the carjacking
5    statute, the kidnapping statute is meant to protect people, not an instrumentality of interstate
6    commerce such as cars."  *Windham*, 53 F.4th at 1012.  Moreover, as discussed earlier,
7    Congress made findings about the economic effect that carjackings have on interstate
8    commerce.  Once again, Congress was silent about the effects of kidnapping on interstate
9    commerce when it amended the kidnapping statute in 2006 to expand federal jurisdiction
10   for that offense.  Congress's silence on that point was dispositive on the jurisdictional issue
11   for the court in *United States v. Chavarria*, No. 22-cr-1724-KG, 2023 WL 3815203, at *4
12   (D.N.M. June 5, 2023).

13          In *Chavarria*, the defendant was charged with a kidnapping resulting in death.  2023
14   WL 3815203, at *1.  The defendant allegedly used a vehicle offense during the commission
15   of the offense, but the offense involved solely intrastate activity.  *Id.*  The indictment
16   alleged that federal jurisdiction was based on a vehicle being "a means, facility, and
17   instrumentality of interstate commerce."  *Id.*  The defendant did not dispute that the federal
18   kidnapping statute applies to instrumentalities of interstate commerce or that the second
19   *Lopez* category applied to his challenge to the kidnapping count.  *Id.* at *2–3.

20          In his motion to dismiss the kidnapping offense, the defendant argued that "a vehicle
21   is not an instrumentality of interstate commerce when use for intrastate non-economic
22   violent crime such as kidnapping."  *Id.*  The defendant also argued that the Commerce
23   Clause can be used to regulate instrumentalities of interstate commerce only if
24   congressional hearings "determine that the activity in question has a substantial effect on
25   interstate commerce."  *Chavarria*, 2023 WL 3815203, at *2–3.  The defendant noted that

26   ───────────────

27          [6] The *Protho* court also cites to *Morgan* where, as already discussed, the Seventh
     Circuit held that cellphones, the internet, and GPS devices are instrumentalities of interstate
28   commerce for purposes of the kidnapping statute.  As discussed in text *infra*, the nexus that
     those instrumentalities have to interstate commerce is quite different than vehicles as a
     class.

"there are no congressional findings that the use of a vehicle to commit a crime just by itself brings the matter under [the] ambit of the Commerce Clause." *Id.*

The district court dismissed the kidnapping charge primarily based on the lack of Congressional findings on the economic evils of using a vehicle during an intrastate kidnapping. *Id.* at *4. The court began its analysis by pointing out that although *Lopez* was specifically addressing the third category activity that Congress may regulate under its commerce power, some aspects of the decision are instructive to the second category. *Id.* "For example, when determining which category applied to the question presented, the Court categorized the second category of Congress' commerce authority as regulations 'by which Congress has sought to protect an instrumentality of interstate commerce or a thing in interstate commerce.'" *Id.* (*quoting Lopez*, 514 U.S. at 559). The *Chavarria* court then noted that a vehicle "is not what Congress sought to protect when enacting the kidnapping statute. The way the [Supreme] Court characterizes this second category suggests that vehicles are not an instrumentality of interstate commerce in connection with the kidnapping statute, by which Congress sought to protect human kidnapping victims." *Chavarria*, 2023 WL 3815203, at *4.

The court turned to a discussion of *Morgan*, where "the Tenth Circuit was presented with an as-applied Commerce Clause challenge in a federal kidnapping case[.]" *Id.* The defendants in *Morgan* used cell phones, a GPS device, and vehicles during the commission of the kidnapping. *Id.* The *Chavarria* court found "it relevant that despite all defendants utilizing a vehicle during the kidnapping, the Tenth Circuit does not list vehicles among the means, facilities, or instrumentalities of interstate or foreign commerce used by defendants." *Id.* In fact, there was no "other relevant discussion of the vehicle" in *Morgan*. *Id.* The dearth of discussion about vehicles indicated to the *Chavarria* court that "vehicles without more are not instrumentalities of interstate commerce." *Chavarria*, 2023 WL 3815203, at *4.

The district court then turned to *United States v. Morrison*, 529 U.S. 598, 617 (2000), even though the Supreme Court was once again applying the third Commerce

Clause category. *Id.* at *5. The district court concluded that the Supreme Court's reasoning for declaring the criminal statute unconstitutional in that case also applied to the kidnapping statute analyzed under category two. *Id.* First, the kidnapping statute regulates a non-economic violent crime. *Id.* And the Supreme Court has noted that "'thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature.'" *Id.* (*quoting Morrison*, 529 U.S. at 613). Second, "there is no explicit reflection either of Congress['s] intent for application of the federal kidnapping statute whenever there is use of a vehicle, nor any jurisdictional element requiring an explicit connection between the use of the vehicle and interstate commerce." *Chavarria*, 2023 WL 3815203, at *5. The district court noted that "there are no congressional findings regarding the impact of a vehicle involved in kidnapping on interstate commerce and it appears the United States has made such conclusion of law as part of its Superseding Indictment when it defined the vehicle as an instrumentality of interstate commerce." *Id.* Third, the Supreme Court has rejected "'the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.'" *Id.* (quoting *Morrison*, 529 U.S. at 617.)

The district court concluded that "Congress has not indicated an intent to assert Commerce Clause authority and bring under federal jurisdiction non-economic criminal kidnapping entirely occurring intrastate simply because of the use of a common vehicle." *Id*. at *8. The court held that it would be improper to extend "federal jurisdiction under the Commerce Clause because of a use of a vehicle without explicit congressional intent to regulate non-economic criminal behavior and with no jurisdictional or case-by-case inquiry." *Id.*

This Court agrees with *Chavarria* that, unlike the federal carjacking statute, the Commerce Clause analysis is greatly complicated by Congress's silence about why federal jurisdiction for kidnapping was expanded by the Adam Walsh Act in 2006. However, it is hard to reconcile *Chavarria's* reliance on the Tenth Circuit's decision in *Morgan* with

1    *Chavarria's* laser focus on the absence of congressional findings for the kidnapping statute.

2    As discussed earlier, in *Morgan* the Tenth Circuit held that cell phones, GPS devices, and

3    the Internet are instrumentalities of interstate commerce.  The Tenth Circuit did so

4    notwithstanding Congress's silence on the impact that these devices used in a kidnapping

5    have on interstate commerce.  That result is arguably inconsistent with the reasoning of

6    *Chavarria*.  Perhaps the *Chavarria* court viewed these electronic devices, whose signals

7    undoubtedly cross state lines, inherently different that vehicles.  As discussed below, this

8    Court is certainly of that view.

9         However, the Court does not agree with *Chavarria* that *Morgan's* failure to address

10   the vehicles used in that case means that "the Tenth Circuit excluded vehicles from the

11   instrumentalities of interstate commerce[.]"  *Chavarria*, 2023 WL 3815203, at *6.  The

12   indictment in *Morgan* alleged (and the jury instructions stated) that the electronic devices

13   referred to above were the instrumentalities of interstate commerce that provided federal

14   jurisdiction for the kidnapping offense.  748 F.3d at 1031-1032.  For whatever reason, the

15   government in that case chose not to allege that the vehicles were instrumentalities of

16   interstate commerce.  As a result, the *Morgan* court simply never had to address that issue.

17        Another district court in the District of New Mexico disagreed with *Chavarria's*

18   reasoning and reached the opposite conclusion.  *United States v. Bachicha*, No. 1:19-cr-

19   02328-MLG-1, 2023 WL 8566503 (D.N.M. Dec. 11, 2023).  As in *Chavirra*, the

20   kidnapping offense in *Bachicha* allegedly "took place within New Mexico's boundaries:

21   the alleged victims were not transported outside the state."  2023 WL 8566503, at *1.  The

22   government asserted that jurisdiction existed because the defendant "allegedly used a

23   motor vehicle during the commission of the offense, which it identifie[d] as a means,

24   facility, or instrumentality of interstate commerce."  *Id.*  The defendant moved to dismiss

25   the kidnapping offense arguing that in enacting the 2006 amendment to the kidnapping

26   statute, Congress "did not define the term 'instrumentality of interstate commerce' to

27   include a motor vehicle."  *Id.*

28        The district court denied the motion for the following reasons.  The court pointed to

- 20 -

the definition of "instrumentality" in the dictionary – "the fact or function of serving to bring about a result or accomplish a purpose" – and reasoned that a motor vehicle "comport[ed] with this ordinary meaning in that it functions to accomplish a purpose (*e.g.*, kidnapping for the primary purpose of committing sexual assault)." *Id.*  The court believed its "conclusion [was] strengthened when considering Congress's use of the antecedent 'any' before "instrumentality," which the court construed expansively.  *Id.*  With that understanding, the court reasoned that "it makes sense that Congress intended for 'instrumentality' to serve as an expansive catch-all encompassing –for example – both tangible objects, like cell phones and GPS devices, as well as intangibles like the internet. . . . It follows then that an expansive interpretation of the wording 'any instrumentality' includes motor vehicles." *Bachicha*, 2023 WL 8566503, at *1 (internal citations omitted).

The court also found that its conclusion was supported "when considering Congress's extensive authority to regulate interstate commerce"; more specifically, the three broad categories of activity identified in *Lopez* that Congress may regulate under its commerce power.  *Id.* at *2.  The court concluded that "[g]iven the language in both the indictment and the statute, the second type of congressional authority is implicated." *Id.*  The court reasoned that "[e]ven though the kidnappings occurred entirely within the boundaries of New Mexico, they were facilitated by the use of a regulated instrumentality of interstate commerce:  a motor vehicle.  Thus, '[f]ederal prosecution for such conduct comports with the Commerce Clause' under the second category." *Id.* (*quoting Morgan*, 748 F.3d at 1032).

The court went on to note that "most other cases addressing analogous circumstances concur that Congress possesses this authority and accordingly those courts have held that motor vehicles constitute instrumentalities of interstate commerce." *Id.* (citations omitted).   Although these cases were decided under the federal carjacking statute, the court did not see a "compelling reason to interpret that statutory language differently than the language of the kidnapping statute."  2023 WL 8566503, at *2.

The court noted that it was aware that *Chavarria* interpreted the Tenth Circuit's

decision in *Morgan* "as foreclosing the possibility that motor vehicles are an instrumentality of interstate commerce." *Id*.  However, the *Bachicha* court did not read *Morgan* so narrowly "because the precise question presented here was not before the *Morgan* court: the indictment and tendered jury instructions" in that case reflect that the "federal jurisdictional hook rested on the defendants' use of a cell phone, the Internet, and a GPS device in furtherance of the kidnapping plot – *not* a motor vehicle." *Id*. (emphasis in original).  Thus, the district court concluded that the "Tenth Circuit did not reach the issue, and its decision does not exclude the possibility that vehicles are instrumentalities of interstate commerce." *Id*.

As discussed above, the Court agrees with *Bachicha* that *Morgan* does not foreclose the possibility that a motor vehicle is an instrumentality of interstate commerce under the kidnapping statute.  The Court also agrees that the Supreme Court in *Lopez* made clear that Congress can regulate instrumentalities of interstate commerce under its commerce power.  However, the Court is not persuaded by *Bachicha's* reasoning that a motor vehicle is *per se* an instrumentality of interstate commerce under the kidnapping statute.

The Court does not believe that the dictionary's definition of "instrumentality" – "the fact or function of serving to bring about a result or accomplish a purpose" -- adds much to the Commerce Clause analysis.  There is no doubt that a motor vehicle comports with the ordinary meaning of "instrumentality" in terms of it being used to accomplish a purpose, here, a kidnapping.  Given the ordinary meaning of "instrumentality", a defendant would be hard-pressed to succeed on a Commerce Clause challenge because an object used to commit an offense is not an "instrumentality."   In fact, the Court has not found a case where a defendant made that argument.  But the ordinary meaning of an "instrumentality" can include many tangible and intangible objects that are not within Congress's Commerce Power. Congress only has the power under the Commerce Clause to regulate "an instrumentality of interstate commerce," not a mere "instrumentality."

The Court also does not understand how the Commerce Clause analysis is impacted by the fact that Congress used the antecedent "any" before "instrumentality," and therefore

intended "instrumentality" to be an expansive "catch-all." As discussed above, the definition and ordinary meaning of "instrumentality" is already broad. The addition of the antecedent "any," or even "all," does not broaden the definition or ordinary meaning of this already broad term. But even if the *Bachicha* is correct, once again, the breadth of the tangible and intangible objects that meet the definition of an instrumentality does not mean that every instrumentality falls within Congress's commerce clause power. For example, a bicycle used in a kidnapping could be an "instrumentality" under the ordinary meaning of that term. However, that is only the beginning of the jurisdictional analysis under the Commerce Clause. The instrumentality must have the requisite nexus to interstate commerce. The rub is how that nexus is established under the Commerce Clause.

Congressional findings are clearly the best evidence of the interstate nexus because they have repeatedly been used show that the enactment of a federal statute was within Congress's commerce power. The carjacking and murder for hire statutes are the best examples. Although the government does not make this argument, the Court disagrees with *Protho* and *Windham* that it is helpful to compare the jurisdictional provisions of the carjacking or the murder-for-hire statutes to the kidnapping statute. In fact, the Court believes it is not appropriate to do so because the jurisdictional provisions are not comparable given the language used in these other statutes.

Relatedly, the Court rejects any notion that the legislative history for either the carjacking statute or the murder for hire statute is relevant to the Commerce Clause analysis for kidnapping statute. The congressional findings for the carjacking and murder of hire statutes are specific to the effect that each offense has on interstate commerce. As a result, those findings are not relevant to the kidnapping statute. Congress's commerce power is undoubtedly broad, but Congress's power to enact (or amend) a federal statute under its commerce power is dependent on the prohibited activity's effect on interstate commerce, and not the activity prohibited by an unrelated statute. Stated another way, the Commerce Clause analysis is statute specific, as is the legislative history and congressional findings that address the prohibited activity's effect on interstate commerce.

- 23 -

Unlike the 2006 amendments to the kidnapping statute, there is legislative history for when the kidnapping statute was first enacted in 1932.  The Supreme Court noted that this statute was drawn against a backdrop of organized violence and an epidemic of kidnappings.  *Chatwin v. United States*, 326 U.S. 455, 462–63 (1946).  Law enforcement, who had no uniform intercommunication and whose authority was restricted to their own jurisdiction, found themselves laughed at by criminals who had no such limitations or restrictions.  *Chatwin*, 326 U.S. at 462–63.  As a result, a person would be kidnapped in one state and whisked into another by captors who knew that law enforcement in the jurisdiction where the crime was committed did not have authority in the neighboring state. *Id.*  The federal kidnapping statute was designed for these situations where victims were transported across state lines.  *Id.*

In *United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993), a pre-Adam Walsh Act case, the Tenth Circuit noted that the Supreme Court's discussion in *Chatwin* "suggests that the concern of Congress in enacting the federal kidnapping statute was not to regulate comprehensively an activity that it perceived as having an adverse effect on interstate commerce or to protect the instrumentalities of interstate commerce.  Rather, Congress was attempting to address the misuse of interstate commerce by kidnappers to frustrate the efforts of state police."

Prior to the passage of the Adam Walsh Act in 2006, "federal law prohibited kidnapping only where the victim was transported across state line[s].  With the passage of the Act, however, jurisdiction was expanded to include kidnappings where 'the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense.'"  *United States v. Frazier*, No. 3:17-cr-00130, 2023 WL 4930187 (M.D. Tenn. Aug. 2, 2023) (*quoting* 18 U.S.C. 1201(a)(1)).[7]  But, once again,

_____

[7] The Court notes that Congress's concern in 1932 about law enforcement lacking "uniform intercommunication" was certainly eliminated well before the 2006 amendments simply by advances in technology.  To be sure, advances in technology have made cell phones, the internet, and GPS devices instrumentalities of interstate commerce.  But the same is not true for motor

- 24 -

1    there are no congressional findings or legislative history for the 2006 amendments that

2    address the need to broaden federal jurisdiction for kidnappings, let alone the impact of a

3    vehicle involved in kidnapping on interstate commerce.

4        This Court views the congressional silence as problematic given that Congress's

5    concern in enacting the kidnapping statute in 1932 was not to protect the instrumentalities

6    of interstate activity or even regulate an activity that had an adverse effect on interstate

7    commerce.  On their face, the 2006 amendments to the jurisdictional provision of 18 U.S.C.

8    1201(a)(1) do exactly that; but there is no mention in the legislative history for why those

9    protections were needed when "instrumentalities of interstate activity" are used during a

10   kidnapping, let alone an intrastate kidnapping.  As a result, it is difficult for courts to

11   determine whether the expansion of federal jurisdiction for kidnapping offenses is within

12   Congress's commerce power.

13       As discussed above, this Court has concerns about the reasoning of each court that

14   has addressed whether a vehicle used in an intrastate kidnapping is an instrumentality of

15   interstate commerce under the kidnapping statute.  Those concerns undoubtedly stem from

16   Congress's silence on the 2006 amendments to the kidnapping statute.  Courts are left to

17   divine Congress's intent in a vacuum for a violent offense that was traditionally reposed in

18   the States.   The result is the conflicting conclusions of the courts discussed above each of

19   which employ a different Commerce Clause analysis.

20       The Court believes that the proper analysis of whether a motor vehicle is an

21   instrumentality of interstate commerce under the kidnapping stature is the defendant's

22   argument that the Seventh Circuit rejected in *Protho*.   That is, a court must view

23   automobiles individually, rather than as a class, when deciding their instrumentality status

24   under the kidnapping statute.   Stated another way, a motor vehicle used during a

25   kidnapping can only be an instrumentality of interstate commerce if the evidence at trial

26   establishes that the vehicle at issue was used for an interstate purpose (even if the vehicle

27
28   vehicles which existed in 1932 (although less prevalent than today) when the kidnapping statute
     was enacted.  Indeed, motor vehicles were likely the primary means of transportation used in 1932
     to "whisk" a kidnapping victim from one state to another.

- 25 -

did not travel interstate during the commission of the offense) or has some other requisite nexus to interstate commerce.[8]  This conclusion ensures there is a case-by-case Commerce Clause analysis for a kidnapping offense where jurisdiction is based on the use of a vehicle during the commission of that offense.   Such an analysis is necessary given the congressional silence when the kidnapping statute was amended in 2006 to greatly expand federal jurisdiction for that offense.  That analysis is also necessary because the use and regulation of vehicles differ from other modes of transportation, such as a common carrier.

The Supreme Court in the *Shreveport Rate Cases*, 234 U.S. 342 (1914) "upheld a federal law that prohibited the use of an instrumentality of interstate commerce – a railroad – to charge discriminatory intrastate rail rates." *Morgan*, 748 F.3d at 1032.  Even in 1914, railroad companies were easily analyzed as a class under the Commerce Clause because tracks were laid across state lines and a railroad company is a commercial venture. A person who takes a train uses an instrumentality of interstate commerce regardless of whether the person intends only to travel within one state.  The same is true for a commercial airline or a bus company that has interstate routes even if the passenger is only travelling intrastate during the commission of an offense.  That is not the case for automobiles, which simply *can* (or *did*) travel interstate.  Additionally, railroad and airline traffic are commercial in character, whereas motor vehicles are not generally used for commercial purposes. Moreover, railroads and airlines are heavily regulated by the federal government.  Motor vehicles are primarily regulated by the states, at least with respect to traffic rules, licensing drivers, as well as registration and insurance requirements.   For these reasons, unlike a common carrier, motor vehicles are not inherently an instrumentality of interstate commerce, and therefore, cannot as a class under the Commerce Clause.

The Court's reasoning finds support in *Garcia v. Vanguard Car Rental USA, Inc.*,

---

[8]  Federal jurisdiction for carjacking statute, an economic crime and within Congress's commerce power, hinges on the vehicle being transported, shipped, or received in interstate or foreign commerce.  The government must prove that jurisdictional element at trial.  Perhaps that showing is sufficient for jurisdiction under the kidnapping statute as well.

540 F.3d 1242, 1249–50 (11th Cir. 2008). In that case, the Eleventh Circuit expressed concern that "if a car's status as an instrumentality of interstate commerce were by itself sufficient to support the exercise of the commerce power, there would be no limit to the aspects of automobile use that Congress could regulate."[9] *Mandel*, 647 F.3d at 710. The Eleventh Circuit "declined to sustain the Graves Amendment, 49 U.S.C. 30106," which shielded rental and leasing firms for vicarious liability for injuries to persons or property arising from a customer's use of lent vehicles, "as a valid regulation of instrumentalities of interstate commerce." *Garcia*, 540 F.3d at 149-1250. The *Garcia* court held that "[i]f cars are always instrumentalities of interstate commerce . . . Congress would have plenary power not only over the commercial rental market, but over many aspects of automobile use" including "quintessentially state law matters as traffic rules and licensing drivers." *Id.* at 1250.[10]

The concern about the federal government expanding into subject matters that were traditionally reserved to the states was also addressed by the Supreme Court in *Morrison*. The Supreme Court made clear that Congress may not "regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce. *Morrison,* 529 U.S. at 617. "That is because '[t]he regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States.'" *Windham*, 53 F.4th at 1011 (*quoting Morrison*, 529 U.S. at 618)). In holding that Congress exceeded its

---

[9] In his dissent in *Bishop,* 66 F.3d at 598 (where the Third Circuit upheld a Commerce Clause challenge to the federal carjacking statute), Circuit Judge Becker noted that whereas rail, plane, and commercial truck traffic is almost always commercial in character, the use of private automobiles is often neither interstate nor commercial. The mere fact that private cars *can* be used in interstate commerce thus was insufficient, in Judge Becker's view, to justify the exercise of the commerce power. *Id.*

[10] The *Garcia* court ultimately upheld the Graves Amendment under the third *Lopez* category: activities that substantially affect interstate commerce. In its supplemental pleading, the government presents the alternative argument that the kidnapping statute also falls within Congress's commerce power under the third *Lopez* category. That argument has been rejected by many other courts and there is no evidence before this Court to support that argument.

commerce power in enacting the Violence Against Women Act, the Court noted that "it could 'think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of the victims.'" *Id.* (*quoting Morrison*, 529 U.S. at 618)).  The same is true for the kidnapping statute, a crime traditionally reposed in the states, especially in the absence of congressional findings that address how federal regulation of intrastate kidnappings is directed at instrumentalities of interstate commerce.

For the reasons discussed above, the Court concludes that motor vehicles cannot be analyzed as a class under the commerce clause for purposes of the kidnapping statute.  A motor vehicle's connection to interstate commerce is fact specific, and therefore, an individual case-by-case analysis must be conducted to determine the instrumentality status of a motor vehicle used in a kidnapping.  In the context of this motion to dismiss, the Court does not have sufficient facts to make the instrumentality determination.  The only fact presented to the Court in connection with the instant motion is that a vehicle was used to commit an intrastate the kidnapping.  That fact alone does not make the vehicle an instrumentality of interstate commerce.  The government must present evidence at trial to establish that the motor vehicle used during the kidnapping is an instrumentality of interstate commerce.[11]

---

[11] As discussed in text *infra*, the Court's conclusion that a case-by-case Commerce Clause analysis is necessary is also consistent with district court cases that reject facial challenges to the kidnapping statute made in a motion to dismiss and conclude that an "as applied" challenge is properly addressed after there is a full development of the facts at trial.  *See United States v. Ramos*, No. 12 Cr. 556(LTS), 2013 WL 1932110, at *3–4 (S.D.N.Y. May 8, 2013) (Defendant's as applied challenge that the use of the vehicle "was too attenuated from the alleged kidnapping to create a nexus to interstate commerce" can be renewed following the government's presentation of its case at trial.); *United States v. Davis*, No. 16 CR 570, 2019 WL 447249, at *3 (N.D. Ill. Feb. 5, 2019) (Defendant can file a motion for acquittal at trial to support his argument that use of a telephone "does not support the interstate commerce element of the [kidnapping] offense."); *United States v. Brown*, No. 13 Cr. 345(LGS), 2014 WL 4473372, at *4 (S.D.N.Y. Sept. 10, 2014) (Defendant's argument that the kidnapping statute as applied in his case is unconstitutional because the use of the instrumentality (which the government did not specify in the indictment) is solely intrastate or incidental to the offense is not properly addressed in a motion to dismiss because it challenges the sufficiency of the evidence.).

Finally, the Court turns to the government's argument that the determination of whether a vehicle is an instrumentality of interstate commerce for purposes of the kidnapping statute is a question of law for the court to decide.  The government asserts that if the trial court determines that vehicles are instrumentalities of interstate commerce as a matter of law, the court will instruct the jury accordingly.  The jury will then decide the factual issue of whether the defendant used a vehicle to commit or during the commission of the kidnapping.

Although the Court expressed skepticism at oral argument that the government was correct, cases from other circuits support its position.  *See Morgan*, 748 F.3d at 1034 (district court correctly instructed the jury that cell phones, GPS devices and the internet are instrumentalities of interstate commerce; to hold otherwise would allow one jury to find that these devices are instrumentalities of interstate commerce and another jury to find they are not); *Protho*, 41 F.4th at 828 (noting that the district court instructed the jury that the defendant used an instrumentality of interstate commerce if he used an automobile in committing or in furtherance of the commission of the offense).  However, this Court's conclusion that a case-by-case factual analysis is necessary to determine the instrumentality status of a vehicle for purpose of the kidnapping applies regardless of whether the judge or jury makes that determination.[12]

Simply stated, even if the instrumentality status of a vehicle is a question of law, additional facts are required for the trial court to make that legal determination.  As already discussed at length, unlike cell phones, the internet, GPS devices, and common carriers, cars are not inherently an instrumentality of interstate commerce.[13]  As a result, the

---

[12] The *Morgan* court concluded that if instrumentality status was a question fact, it would allow one jury to find that these devices are instrumentalities of interstate commerce and another jury to find they are not.  748 F.3d at 1034.  That is certainly a concern if instrumentalities are analyzed as a class; but it is far less of a concern if instrumentality status is determined based on the facts of each case.

[13] The Court notes that any case where cell phones, GPS devices, or the Internet are used during the commission of an offense, the government undoubtedly presents evidence at trial about how those devices work – *e.g.*, signals are transmitted via wires or satellites between states and foreign counties – to support the trial court's legal conclusion that these devices are

1    determination of whether the motor vehicle used during the kidnapping is an

2    instrumentality of interstate commerce cannot be made in the context of a motion to

3    dismiss.

4                                    **CONCLUSION**

5         The Court concludes that motor vehicles cannot be analyzed as a class in

6    determining their instrumentality status for purposes of the kidnapping statute.  Stated

7    another way, a vehicle is not *per se* "an instrumentality of interstate commerce" for an

8    intrastate kidnapping offense simply because motor vehicles *can* travel between states.

9    However, there is no doubt that a motor vehicle can, based on the facts of a given case,

10   qualify as an instrumentality of interstate or foreign commerce under the federal

11   kidnapping statute.  For that reason, the defendant has failed in his facial constitutional

12   challenge to the kidnapping offense.

13        "A facial challenge to a legislative act must meet the high bar of establishing 'that

14   no set of circumstances exists under which the Act would be valid.  The fact that the

15   [relevant statute] might operate unconstitutionally under some conceivable set of

16   circumstances is insufficient to render it wholly invalid[.]"  *United States v. Ramos*, No. 12

17   Cr. 556(LTS), 2013 WL 1932110 (S.D.N.Y. May 8, 2013) (*quoting United States v.

18   Salerno*, 481 U.S. 739, 745 (1987).   Because a motor vehicle can qualify as an

19   instrumentality of interstate commerce for purpose of the kidnapping statute, the defendant

20   cannot meet the high bar of establishing that no set of circumstances exist under which the

21   statute would be valid.

22        For purposes of a motion to dismiss, the Court must accept the truth of the

23   allegations in the indictment in analyzing whether a cognizable offense has been charged.

24   *Boren*, 278 F.3d at 914. As a result, Count Two's jurisdictional allegation that an

25   instrumentality of interstate commerce, *i.e.*, a vehicle, was used to commit the kidnapping

26   offense is facially valid.   Because Count Two states a cognizable offense, it is

27

28   instrumentalities of interstate commerce as a matter of law.  It seems logical that the government
     should be required to offer evidence at trial to support the trial court's legal conclusion that a
     vehicle used during the kidnapping is an instrumentality of interstate commerce.

                                         - 30 -

1    recommended that the District Court deny the defendant's instant motion based on the

2    facial challenge to the kidnapping statute.

3          The Court also rejects the defendant's "as applied" constitutional challenge to the

4    kidnapping statute because the defendant is challenging the sufficiency of the evidence

5    establishing jurisdiction.  "A motion to dismiss is not the appropriate vehicle to address

6    factual issues."  *United States v. Davis*, No. 16 CR 570, 2019 WL 447249, at *3 (N.D. Ill.

7    Feb. 5, 2019).  "There is no such thing as a motion for summary judgment in a criminal

8    case.'"  *Brown*, 2014 WL 4473373, at *4 (*quoting Russell v. United States*, 369 U.S. 749,

9    791 (1962)).  The Government has not presented all of its evidence; it has only provided

10   enough sufficient for an indictment."  *Davis*, 2019 WL 447249, at *3.  Thus, an "as

11   applied" challenge is premature and "must await trial and a full development of the facts."

12   *Ramos*, 2013 WL 1932110, at *3.[14]   If the defendant believes that the evidence presented

13   at trial does not support the interstate commerce element on the kidnapping offense, he can

14   file a motion for acquittal under Fed. R. Crim. Pro. 29.  *Davis*. 2019 WL 447249, at *3.[15]

15   Accordingly, the Court recommends that the District Court deny to the Motion to Dismiss

16   Count Two "without prejudice to renewal of the 'as-applied' challenge following the

17   Government's presentation of its case."  *Ramos*, 2013 WL 1932110, at *4.

18

19

20

21
_____

22          [14] A jury found the defendant in *Ramos* guilty of the kidnapping offense.  *United States v. Ramos*, 622 Fed. App'x 29 (2d Cir. 2015).    On appeal, the defendant argued that the evidence
23   was insufficient to support the jury's finding beyond a reasonable doubt that a telephone was used
     in furtherance of the kidnapping.  *Ramos*, 622 Fed. App'x at 29.  The Second Circuit rejected that
24   argument because the evidence at trial was sufficient to allow a reasonable fact finder to conclude
     that the defendant used a telephone during the kidnapping.  *Id*. at 30. Specifically, the victim
25   testified that he was thrown in the back of the car and during the car ride, it "sounded like he was
26   on the phone[.]'"  *Id*.  Based on that testimony, "combined with the cell-site map and cell logs,"
     a reasonable juror could conclude that the defendant used a phone during the kidnapping.  *Id*.

27          [15] The defendant's argument that the government cannot offer evidence at trial about a
28   different instrumentality being used during the commission of the kidnapping should be raised
     with the district court if the government intends to do so.  That issue is not before this Court.

1

**<u>RECOMMENDATION</u>**

2   For the reasons discussed above, it is recommended that the District Court deny the

3 defendant's Motion to Dismiss Count Two of the Superseding Indictment, but grant the

4 defendant leave to renew the motion at the close of the government's case at trial.

5   Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal

6 Procedure, any party may serve and file written objections within fourteen (14) days after

7 being served with a copy of this Report and Recommendation.  No reply shall be filed

8 unless leave is granted from the District Court.  If objections are filed, the parties should

9 use the following case number: **CR 22-01545-TUC-RM.**

10   Failure to file timely objections to any factual or legal determination of the

11 Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right

12 of review.

13

14            Dated this 1st day of March, 2024.

15

16

17

18            Eric J. Markovich
             United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28