**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-22-01545-001-TUC-RM (EJM) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Aaron Thomas Mitchell, | |
| Defendant. | |

On March 19, 2024, the Court held a hearing in which the Federal Public Defender's Office ("FPD") made an oral motion to withdraw as Defendant's counsel. (Doc. 168.) The Court granted the oral motion from the bench. (*Id.*) This formal order commemorates the Court's oral ruling.

**I.   Background**

  **A.   Early Procedural History**

Defendant is charged in a Superseding Indictment with Deprivation of Rights Under Color of Law, in violation of 18 U.S.C. § 242; Kidnapping of a Minor, in violation of 18 U.S.C. §§ 1201(a)(1) and (g); and False Statements, in violation of 18 U.S.C. § 1512(b)(3). (Doc. 37.) The Government alleges that, on April 25, 2022, the 15-year-old Minor Victim ("M.V.") was waiting by her middle school when Defendant, then-employed as a Customs and Border Protection Officer, ordered M.V. to get into his car. (Doc. 160 at 2.) Defendant then handcuffed M.V., and drove her to his apartment, where he repeatedly sexually assaulted her. (*Id.*)

1   In July 2023, the Court set a non-firm trial date for December 2023 to provide the
2   parties sufficient time to choose a firm trial date. (Doc. 63.) On September 28, 2023, after
3   five defense motions to continue the trial date and plea deadline, the Court set a firm trial
4   date of March 25, 2024. (Doc. 65.) All parties agreed to this date (Doc. 160 at 3), and the
5   Court warned that it would not grant further continuances.

### B.  Emergency Telephonic Hearing

On February 16, 2024, this Court held an emergency Telephonic Hearing (Doc. 154) at defense counsel's request to address Defendant's Emergency Motion to Continue Motions Hearing and Trial (Doc. 151). Defense counsel's Motion requested that the Court grant a 180-day continuance of the upcoming Motions Hearing and trial due to lead counsel Benjamin Singerman's "urgent medical issue" and, separate from the medical issue, Mr. Singerman's "preplanned leave of absence beginning May 20, 2024, and ending August 5, 2024." (*Id.* at 3-4.)[1] Mr. Singerman asserted that he had built a relationship with Defendant, and a replacement attorney would be unable to meet Mr. Singerman's preparedness for trial. (*Id.* at 5-6.)[2] The Government objected to a 180-day continuance. (Doc. 154.) However, the Government confirmed it would be amenable to a brief extension due to Mr. Singerman's health issues. (*Id.*) To accommodate Mr. Singerman's medical concerns, his leave of absence scheduled to begin on May 20, 2024, and to allow him to stay on the case, the Court continued the trial to May 6, 2024. (*See id.*)

### C.  Defendant's Eighth Motion to Continue Trial

On March 4, 2024, Defendant filed his eighth Motion to Continue Trial. (Doc. 159.) The Motion requested to continue the trial date of May 6, 2024, to September 3, 2024, because Mr. Singerman was "medically unfit to continue as lead counsel," and he had been "directed by the Federal Public Defender's Office to end" his representation of Defendant. (*Id.* at 1.) The Motion informed the Court that Mr. Singerman's former second chair, Jordan Malka, would assume the lead counsel role. (*Id.*) Mr. Malka averred a September

---

[1] Mr. Singerman specifically requested an early September trial date, one month after his return from his planned leave of absence. (Doc. 151.)
[2] Defense counsel also averred that the Government's "late disclosure" necessitated the continuance. (*Id.* at 2.)

1  trial date was necessary to allow him and a second lawyer time to prepare for trial. (*Id.* at
2  2.) Mr. Malka further averred that it would take a second lawyer "hundreds of hours" to
3  be ready for trial and that Victoria Brambl, a supervisor at the FPD's Office, had advised
4  that no attorneys could be prepared for a May trial date. (*Id.*) Mr. Malka noted that their
5  office is "short-staffed because several attorneys have left the office[,] and there has been
6  a hiring freeze." (*Id.*)

7  The Government filed a Response in Opposition to Defendant's Motion to
8  Continue. (Doc. 160.) The Government argued, among other things, that (1) further
9  continuing the trial would inconvenience all involved, particularly the minor victim who
10 maintains the right to be free from unreasonable delay under the Crime Victims' Rights
11 Act, *see* 18 U.S.C. § 3771(a)(7); (2) legitimate reasons did not exist for additional delay
12 considering the substantial size of the defense trial team and the fact that Mr. Malka had
13 been assigned to this case since its inception; and (3) defense counsel failed to establish
14 that denial of the requested September trial date would prejudice Defendant because
15 pretrial motions had been fully briefed, experts selected, and only a manageable amount of
16 disclosure remained. (*Id.*)

17 Defense counsel then filed a Reply in which he alleged new reasons for the
18 continuance not included in his initial Motion. (Doc. 162.) Specifically, defense counsel
19 newly averred that the Government's most recent "late" disclosure revealed information
20 potentially warranting the filing of a motion to suppress. (*Id.* at 1.) Defense counsel also
21 newly asserted that (1) it would "likely file a motion to dismiss on one of the counts," (2)
22 Defendant's DNA and digital forensic experts were still reviewing the Government's latest
23 disclosure, (3) defense counsel required time to address an issue regarding the victim's
24 iCloud account, and (4) "numerous items" were missing in the Government's disclosure.
25 (*Id.* at 2-4.) Defense counsel argued that these developments, in addition to its previously
26 cited reasons, established good cause to extend the trial date. (*Id.* at 1-2.)

27 The Government filed a Surreply asserting that defense counsel's "Reply reveals a
28 moving target in terms of the stated reasons for a continuance." (Doc. 167 at 1-2.) The

Government also alleged that defense counsel's characterization of the Government's compliance with discovery obligations was misleading. (*Id.* at 2.) The Government specifically noted that it provided its most recent disclosure to defense counsel before defense counsel filed the instant Motion, and the "new information" contained in the disclosure was much more limited than defense counsel characterized. (*Id.*) Still, the Government clarified that it would not oppose defense counsel seeking permission to file a late motion to suppress based on a *limited* amount of new disclosure. (*Id.* at 4.)

### D. Federal Public Defender's Motion to Withdraw

On March 19, 2024, the Court held a hearing on Defendant's Motion to Continue. (Doc. 168.) Mr. Malka attended the hearing for Defendant, and Mr. Singerman and Ms. Brambl were also in attendance. (*Id.*) Mr. Malka explained that for the reasons stated in his briefings, he would "not be able to effectively represent [Defendant] at trial should trial proceed at the May 6 date." (Reporter's Official Transcript of Proceedings at 7.)[3] The Government expressed its concern that defense counsel had exhibited a "pattern of stalling" and that the only "new disclosure" was limited and insufficient to warrant a September trial date. (*Id.* at 11.) Although the Government opposed the continuance, it averred that it had "cleared the way for a July trial date" by confirming that the prosecutor and victim in Mr. Malka's separate case set for a July trial would not object to a continuance in that case to facilitate completing this trial. (*Id.* at 12.)

M.V.'s aunt made a statement on M.V.'s behalf, urging the Court not to extend the trial date further. (*Id.* at 13-14.) She explained that M.V. and M.V.'s mother are saddened and frustrated by the multiple continuances. (*Id.*)

After hearing from the parties, the Court expressed its concern that further continuances cause scheduling challenges because the Court, the Government, and the FPD's Office all have other firm trials. (*Id.* at 15.) The Court explained that the FPD's Office has a supportive team of paralegals, other attorneys, and supervisors who have

---

[3] The Court asked Mr. Singerman if he would be removed from all other cases in this District. (Reporter's Official Transcript of Proceedings at 8.) Mr. Singerman responded, "not at this time," but he is working on a reduced caseload. (*Id.*)

1 shown an interest in this case, and a lot of work and litigation had already been done. (*Id.*)
2 The Court noted that when it set the case for a firm trial, it warned the parties "that the
3 dates are not going to be moved" and that the parties needed to "pick a date that is far
4 enough to give you an opportunity" to complete the necessary work. (*Id.* at 16-17.) The
5 Court noted that "the charges are very serious, but the indictment…doesn't seem to be as
6 document-intensive, as disclosure-intensive, as other cases that take a lot less time to try."
7 (*Id.* at 24) The Court stated that it was not inclined to grant a continuance until September,
8 but that it would revisit the issue at a later date if defense counsel could show that
9 Defendant would be prejudiced without a continuance. (*Id.* at 27.) Alternatively, the Court
10 stated it was considering moving the trial to June or July. (*Id.* at 27-28)

11 Ms. Brambl stated, "if the Court leaves the trial date, I've been authorized by my
12 boss, Mr. Jon Sands, to move to withdraw our office from the case." (*Id.* at 28.) After
13 requesting clarification from Ms. Brambl, the Court stated, "it appears that, if you do not
14 get the trial date that you're requesting of September, then you are moving to withdraw."
15 (*Id.* at 29.) The Court asked Ms. Brambl if she had discussed this matter with Defendant
16 and whether he agreed. (*Id.*) Defendant confirmed that defense counsel had done so, and
17 he agreed with their decision to withdraw even though it would extend his trial date further.
18 (*Id.* at 30.)

19 The Court explained that it did not believe that "a September date would be in the
20 best interests of the victims," that "no information has been given to the Court as to
21 prejudice with regards to any late disclosure," and that "[n]o motions regarding the late
22 disclosure have been filed with the Court stating that there's been prejudice or that you're
23 moving to suppress anything because of the late disclosure." (*Id.* at 30-31.) The Court
24 further noted that it had previously "made accommodations at the request of Mr. Singerman
25 for the exact time that Mr. Singerman ha[d] requested." (*Id.* at 31.) The Court concluded
26 by stating that it would not grant the September trial date because the Court had "not seen
27 any evidence" that doing so "would balance the interests of the public, the interests of the
28 defense, and the interests of the Government and the victims." (*Id.*) Mr. Malka confirmed

that the Motion to Withdraw was also at his request. (*Id.*)[4]

## II.   Applicable Law

Counsel's representation in this Court is governed by the Arizona Supreme Court Rules of Professional Conduct (the "Ethical Rules"). LRCiv 83.2(e). The Ethical Rules dictate that counsel must "provide competent representation to a client," which demands "thoroughness and preparation reasonably necessary for the representation." ER 1.1. Counsel must also "act with reasonable diligence and promptness in representing a client." ER 1.3. Diligence requires a lawyer to pursue their client's cause despite personal inconvenience and to "take whatever lawful and ethical measures are required to vindicate" that cause. ER 1.3, Comment 1 to 2003 Amendment. "In representing a client, a lawyer shall not use means that have no substantial purpose other than to… delay." ER 4.4(a).[5]

Under ER 1.16, an attorney must decline to represent a client or withdraw from representation if "the representation will result in violation of the Rules of Professional Conduct or other law." ER 1.16(a)(1). "There can be no question that taking on more work than an attorney can handle adequately is a violation of a lawyer's ethical obligations." Ariz. Ethics Op. 90-10 (1990). "[W]here the demands of an extreme caseload make an attorney unable to devote sufficient attention to a particular case, acceptance of that case will cause a violation of Ethical Rules 1.1 on competent representation, 1.3 on attorney diligence and 1.16 for failing to decline or terminate representation where the representation will violate those rules." Ariz. Ethics Op. 86-4. "[A]ccepting more cases than can be properly handled may result not only in reversals for failing to adequately represent clients, but in disciplinary action for violation of the Code of Professional Responsibility." *State v. Smith*, 681 P.2d 1374, 1382 (Ariz. 1984).

## III.   Discussion

---

[4] When the Court queried Mr. Malka whether the request to withdraw was also at his request, Mr. Malka initially stated, "Yes, Your Honor. I'm accepting direct orders from the office." (Reporter's Official Transcript of Proceedings at 31.) The Court twice followed up to ensure that Mr. Malka was also requesting the withdrawal. (*Id.* at 31-32.). Mr. Malka responded, "Yes, to answer your question" (*Id.* at 31), and "Yes, Your Honor" (*Id.* at 32).

[5] "A lawyer is bound by the Rules of Professional Conduct notwithstanding that the lawyer acted at the direction of another person." ER 5.2.

1    As an initial matter, the Court is concerned about the FPD's exercise of competence and diligence in handling Mr. Singerman's health issues and pre-planned leave of absence. In February 2024, defense counsel requested a September trial date to accommodate Mr. Singerman's medical condition and summer leave. Considering the circumstances, the Court inquired at that time if it would be practical for the FPD to replace Mr. Singerman as lead counsel or to add an attorney to supplement Mr. Singerman's efforts. The FPD insisted that replacing Mr. Singerman was unpracticable. Thus, the Court granted a continuance until May 2024 to allow Mr. Singerman to remain lead counsel while accommodating his summer leave and medical issues.

Although the Court granted the continuance, it is questionable whether Mr. Singerman's choice to take a leave of absence shortly before trial, effectively leaving his client without his lead counsel, implicated his duty to diligently pursue his client's matter despite "personal inconvenience." ER 1.3, Comment 1 to 2003 Amendment. The Court is sympathetic to Mr. Singerman's health issues and understands health matters can be unpredictable. However, the Court is also concerned that the FPD's delay in acting to replace Mr. Singerman as lead counsel or to proactively add an attorney to supplement Mr. Singerman's work implicated its duty to provide competent and diligent representation.

The Court also notes the inconsistent reasons proffered by the FPD to warrant a September trial date. *See* ER 3.3 (lawyers have a duty of candor toward the tribunal). With Mr. Singerman's representation terminated, defense counsel yet again requested a September trial date. However, Mr. Malka's assumption of the lead counsel role did not appear to warrant a four-month delay, in addition to the Court's previously granted two-month continuance. Mr. Malka first appeared as co-counsel to Mr. Singerman in August 2022. (Doc. 14.) The Government submits that Mr. Malka was present during each phone conversation with defense counsel and was copied on every substantive email regarding the case. (Doc. 160 at 7.) As the docket reflects, Mr. Malka had actively participated in investigating this case and in motions practice. (*See* Docs. 20, 23, 30, 33, 50, 65, 83, 88,

108, 109, 112, 117, 118, 130).[6] And in addition to two attorneys, the defense team included "four paralegals, two assistant paralegals, and an investigator," who could provide continuity despite Mr. Singerman's removal. (Doc. 151 at 5.)[7] Later, the FPD alleged that a September trial date was substantially necessitated by its need to file additional motions prompted by the Government's "late" disclosure. However, that allegation also appeared to lack merit. As the Court stated, other methods of recourse that did not involve moving the trial date were available to defense counsel, including filing a motion to preclude evidence related to the late disclosure. Defense counsel did not pursue those options. It is troubling to the Court that the FPD's Office may have used "means that have no substantial purpose other than to… delay," implicating Ethical Rule 4.4(a).

Based on the foregoing, the Court is deeply concerned that the FPD's Office failed to adequately manage its intake of new cases to devote sufficient time and resources to this case as the trial date and critical case management deadlines approached. In doing so, the FPD has wasted scarce resources and unnecessarily delayed justice. The Court is particularly troubled by the delay's impact on the minor victim, who maintains "the right to proceedings free from unreasonable delay" under the Crime Victims' Rights Act. 18 U.S.C. § 3771(a)(7).

Finally, the Court reminds the FPD's Office that it has a crucial role in preserving the integrity of the Court and maintaining the trust of the public and its clients. However, these ends are not served by the FPD's Office and FPD Jon Sands threatening to withdraw from a case if the Court does not issue a ruling in their favor. The Court has granted the Motion to Withdraw; however, the Court admonishes the FPD to be mindful of its ethical obligations in the future.

. . . .

---

[6] Docket entries 83 and 112 note that those documents were "signed by attorney Jordan Malka but submitted using the log-in and password belonging to attorney Benjamin Singerman."

[7] The Court agrees that Mr. Singerman's termination constituted a significant lost resource for the FPD. However, it is unclear to the Court why the FPD seemed to insinuate that it would be forced to start from scratch when Mr. Singerman's representation ended. The FPD should consider implementing processes to help facilitate the transferring of a case in situations in which an attorney must terminate their representation of a client.

**IT IS ORDERED** that the Federal Public Defender's Office is removed from this case, as stated from the bench at the March 19, 2024 hearing.

Dated this 7th day of May, 2024.

_____
Honorable Rosemary Márquez
United States District Judge